# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JOSE S. SOTO, SR.,**
        Petitioner,

v.                                           Case No. 06C0925

**TIMOTHY LUNDQUIST,**
        Respondent.

## DECISION AND ORDER

On August 30, 2006, Jose S. Soto, Sr. filed this petition pursuant to 28 U.S.C. § 2254. He asserts that his state court conviction for armed robbery and false imprisonment was imposed in violation of his right to effective assistance of counsel and to due process of law. Petitioner was convicted after a jury trial and sentenced to twenty-three years of confinement followed by a long period of extended supervision. He is currently incarcerated at New Lisbon Correctional Institution.

### I. BACKGROUND

In 2000, during the Memorial Day weekend, a man named Albertano Garcia was driving a car that collided with a black truck occupied by several men. The parties apparently came to an agreement whereby Garcia would cover the repair costs of the truck and they went their separate ways. As of June 2, 2000, Garcia had not paid the repair costs. That afternoon, Garcia and a companion, Elvia Teran, went to the employment agency where they worked. Teran was sitting in Garcia's car and Garcia was approaching the car from the building when two men grabbed Garcia, forced him into their own car and drove away. A third man jumped into Garcia's car and drove away with Teran.

Over the next couple of hours, Garcia and Teran were held hostage. Garcia was held by one woman and three men. They drove Garcia, all the while beating him, to an unoccupied house where they continued to beat him and stole his money. They told Garcia that they were retaliating against him for not paying for repairs on the black truck. They copied information from Garcia's identification cards and told him that if he reported the abduction, they would kill him. Meanwhile, Teran's abductor robbed her and took her to a location where he turned her over to a second man. The second man wanted the title to Garcia's car. He drove Teran to the apartment where she lived with Garcia and instructed her to search for the title. She could not find it. He repeatedly told her that he would kill her if she reported her abduction to the police. Finally, he drove Teran to the location at which Garcia was being held and Garcia's abductors released Garcia to Teran and his car. Garcia and Teran promptly reported their ordeal to the police. Soon after, their roommate was found riddled with bullets, alive but seriously injured, apparently in retaliation for the report.

About a month after the incident, petitioner was charged as a party to the various crimes committed against Garcia and Teran.[1] The evidence against petitioner at trial was significant. Two citizen witnesses saw the abduction and reported the license plate of the car, which was quickly traced to petitioner's wife's gray/silver Ford Taurus. Both Garcia and Teran positively identified the Taurus as the vehicle that had transported Garcia and Garcia identified petitioner as one of the men who abducted him. A man named Hipolito Claudio confessed to being Teran's second abductor and the shooter of her roommate.

---

[1]Petitioner was also charged with soliciting the attempted murder of Garcia's and Teran's roommate, but he was acquitted of that charge.

He testified that petitioner had been among Garcia's abductors. In his defense, petitioner presented the testimony of a neighbor who stated that her license plate was stolen on the morning of the abductions and that she had noticed that petitioner's wife's plate was missing as well. He also presented an alibi witness. A family friend stated that throughout the afternoon of the abductions, petitioner and his wife had helped him move. He stated that petitioner and his wife had parked their Taurus at his house all afternoon.

I will cite to additional facts in the course of my decision.

## II.  STANDARD OF REVIEW

A federal court may grant habeas relief to a state prisoner who is in custody "in violation of the Constitution or laws or treaties of the United States." § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") limits a federal court's authority to grant habeas relief to a person who is being unlawfully held in custody. Under AEDPA, I may grant relief only if the state court decision under review was "contrary to" or involved an "unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), of if it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).

A state court unreasonably applies Supreme Court precedent when it "identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from [the Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Dixon v. Snyder,

266 F.3d 693, 700 (7th Cir. 2001) (quoting Williams v. Taylor, 529 U.S. 362, 407 (2000)). "[A]n unreasonable application is different from an incorrect one." Bell v. Cone, 535 U.S. 685, 694 (2002) (citing Williams, 529 U.S. at 409-10). Under the unreasonable application prong of the habeas statute, "substantial deference is due state court determinations." Searcy v. Jaimet, 332 F.3d 1081, 1089 (7th Cir. 2003). Thus, I must uphold the state court decision if it is "'at least minimally consistent with the facts and circumstances of the case . . . even if it is not well reasoned or fully reasoned, or even if it is one of several equally plausible outcomes.'" Id. (quoting Schaff v. Snyder, 190 F.3d 513, 523 (7th Cir. 1999)).

### III. DISCUSSION

Petitioner raises several grounds for relief. He argues that his trial counsel was unconstitutionally ineffective under Strickland v. Washington, 466 U.S. 668, 687-88 (1984), or failing to impeach a witness whose description of the perpetrator differed from petitioner's description and for failing to present alibi evidence. In addition, he argues that the Wisconsin courts denied him due process of law when they refused to grant him a second trial based on newly discovered evidence.

**A.    Strickland claims**

Strickland clarified that the right to counsel is a right to effective assistance of counsel. 466 U.S. at 686 (quoting McMann v. Richardson, 397 U.S. 759, 771, n. 14 (1970)). A criminal defendant seeking to show that his counsel was constitutionally ineffective must show that his counsel performed deficiently and that the deficient performance resulted in his being prejudiced. Id. at 687. I assess counsel's performance under a reasonableness standard and presume that it fell within the wide range of

4

reasonable professional assistance.  Id. at 688-89.  Informed strategic decisions by a lawyer are virtually unchallengeable.  Id. at 690-91.  In order to establish prejudice, petitioner must show that but for counsel's deficient performance, it is reasonably probable that the outcome of the case would have been different.  Id. at 694.

### 1. Eyewitness Impeachment Evidence

Petitioner's first Strickland claim relates to the victim's description of his abductors. At trial, Garcia identified petitioner as one of his abductors.  The prosecutor asked him if petitioner looked the same as he did at the time of the abduction, and petitioner responded that he had "lost a lot of weight."  (Ans. Ex. G at 113.)  Petitioner argues that his counsel was ineffective for failing to present evidence – a photograph – that would show that petitioner had not lost any weight between the time of the abduction and the trial, thus impeaching Garcia's testimony.

In the state courts, petitioner articulated this claim differently.  He stated that his trial counsel was ineffective for failing to present evidence that he had not lost weight between the abduction and the arrest.  (Ans. Ex. D at 9.)  The court of appeals found that:

> The issue of whether Soto had lost weight after the kidnapping was, at best, a collateral issue in the case.  At trial, Garcia testified that Soto had "lost a lot of weight" since the abduction.  He did not testify that Soto had lost weight between the abduction and the arrest.  We agree with the State that any impeachment on the alleged weight loss would have been of negligible value.  Garcia positively and strenuously identified Soto as the man who hit him with a gun and held him hostage for over two hours.  This identification was not premised on Soto being any particular weight.  We fail to see how counsel provided ineffective assistance by not providing detailed evidence on Soto's weight.

(Id. at 10.)  Respondent has not treated petitioner's different articulation of his claim in federal court as a procedural default.  Rather, respondent asserts that the court of appeals'

5

analysis applied to petitioner's claim regardless of whether it referenced weight loss between the abduction and the arrest or the abduction and the trial, and argues that it was reasonable.

It is not entirely clear whether the court of appeals decision addressed <u>Strickland</u>'s performance prong or its prejudice prong. I read it as most relevant to prejudice – as essentially finding that Garcia's testimony against petitioner was so strong that petitioner's counsel's failure to impeach him on the weight issue did not affect the trial. And I agree. Garcia's identification of petitioner was strong. Garcia saw his abductors at close range for more than two hours. At trial, Garcia confidently identified petitioner as the abductor who had been sitting in the back seat of the car when he was thrown into it, and who had beat him with a gun and threatened him. Further, a police detective testified that, when first shown a photo array containing petitioner's picture, Garcia immediately grabbed it and had a "strong and sudden reaction . . . he said to me in Spanish 'Number 2, Number 2, that's the son of a bitch that was beating me up.'" (Ans. Ex. J. at 19.)

Petitioner argues that Garcia's testimony was not so strong because some evidence suggested that Garcia had confused a man named Ricky Ortiz for petitioner. Petitioner's argument is grounded on the fact that Garcia originally said that the oldest of his abductors was in his early 30's, husky and had a mustache. Petitioner asserts that this description is closer to Ortiz than he because Ortiz is huskier and younger than forty-one-year-old petitioner. However, Garcia identified Ortiz as one of the other abductors – among the two who initially nabbed him – and thus distinguished between the two men. In fact, he noted that he recognized Ortiz at the time of the abduction because Ortiz had been a passenger in the truck with which he had collided. Further, trial testimony indicated that petitioner and

6

Ortiz were extremely close in height and weight, and Ortiz was only a teenager at the time of the abduction. Ultimately, I do not see how it is any more likely that Garcia's description indicated Ortiz than petitioner. And I do not see how a subjective comparison of the huskiness of the two men could support an inference that Garcia's powerful identification of petitioner could have been defeated with evidence relating to petitioner's weight.

Finally, petitioner argues that an eyewitness's certainty as to an identification "does not correlate well with accuracy," (Br. in Supp. at 11), and thus the court of appeals unreasonably credited Garcia's confidence. Indeed, eyewitness testimony relating to their own confidence is troublesome. However, the very article that petitioner cites states well the science:

> Eyewitnesses will often claim to have great confidence in their ability to identify a perpetrator, but for more than 30 years, research examining the utility of confidence as a postdictor of accuracy has generally demonstrated a weak relationship between degree of certainty and identification accuracy. However, there are some conditions in which a stronger relationship may exist. <u>Initial judgments made with very high confidence, for instance, have been shown to be quite diagnostic of witness accuracy</u>.

Colin Tredoux, et al, "Eyewitness Identification," 1 <u>Encyclopedia of Applied Psychology</u> 875, 886 (2004), <u>available at</u> http://eyewitness.utep.edu/Documents/Tredoux&04 EyewitnessIdentification.pdf (emphasis added). In other words, while confidence that increases over time is of dubious accuracy, immediate confidence in an initial identification is generally quite accurate. Given the detective's testimony that petitioner immediately reacted to petitioner's picture and exclaimed "'that's the son of a bitch that was beating me up,'" the court of appeals was not unreasonable in finding that his identification was very strong and thus counsel's failure to impeach Garcia on the weight issue did not prejudice petitioner.

7

Ultimately, while Garcia was unsure about petitioner's weight, he was positive about petitioner's face. As such, petitioner's trial counsel's failure to present evidence of petitioner's consistent weight may not have been deficient performance, and it was certainly not prejudicial. Thus, the state court's resolution of this claim was reasonable.

### 2. Evidence About Petitioner's Car

Petitioner's second Strickland claim is related to his alibi witness. Such witness stated that petitioner and his wife had spent the afternoon of June 2, 2007, helping him move and had parked their car – a grey Ford Taurus – at his house throughout the move. Petitioner argues that his trial counsel should have discovered that he took a gray Oldsmobile, not a Taurus, to help his friend move and that in fact petitioner's son had the Taurus that day. His counsel should have then argued to the jury that the Taurus was out of petitioner's hands at the time of the abduction. The post-conviction court found that petitioner himself had told his counsel that he and his wife used the Taurus; to the extent that this was a lie, the court found that it was intended to protect petitioner's son.[2] Given petitioner's representation to his attorneys, as well as his alibi witness's assertion that petitioner used the Taurus, the court of appeals found that the trial counsel's failure to present evidence of an unknown Oldsmobile was not deficient performance.

Petitioner does not challenge the trial court's factual findings. Indeed, he admits that he and his wife lied to petitioner's counsel to protect their son. However, he argues that, "[i]f it was obvious to the court that Junior used the Taurus when he kipnapped Garcia, it should have been obvious to Soto's counsel." (Br. in Supp. at 17.) Petitioner

---

[2]Petiitoner's son was also charged and convicted in connection with the abduction. Teran identified petitioner's son as her first kidnapper.

8

argues that his trial counsel's stolen license defense strategy was unreasonable because no jury would believe that someone stole petitioner's license plate and affixed it to an identical Taurus, and that it was thus unreasonable for his attorney not to press for a different story from petitioner and a better defense strategy. I disagree. Given petitioner's and the alibi witness's representations to petitioner's trial counsel, his counsel's performance was entirely reasonable, as was the state court's resolution of this claim.

**B.    Due Process claim**

Petitioner's due process claim relates to his state post-conviction motion for a new trial based on newly discovered evidence. In support of that motion, petitioner presented an affidavit signed by prosecution witness Hipolito Claudio disavowing his trial testimony and giving an explanation as to why he lied on the stand. Petitioner also presented an affidavit signed by his son stating that he had used the family car for the abduction and that his father had played no role in it. Wisconsin state law provides that the post-conviction recantation of an accomplice generally warrants a new trial only where it is corroborated by other newly discovered evidence. State v. McCallum, 208 Wis. 2d 462, 476 (1997). However, this requirement is sometimes difficult to meet and thus the state supreme court has held that the trial court may also grant a new trial in a recantation case if there is a feasible motive for the initial false statement and there are circumstantial guarantees of the trustworthiness of the recantation. Id. at 477-78. Ultimately, whether to grant a motion for a new trial based on newly-discovered evidence is left to the trial court's sound discretion. State v. Carnemolla, 229 Wis. 2d 648, 656 (Ct. App. 1999).

9

The post-conviction court found that petitioner's son's affidavit did not qualify as newly discovered evidence because petitioner knew of his son's involvement and his son's contention that petitioner had no part in the crimes prior to trial. The Wisconsin Court of Appeals agreed that the son's testimony was not newly discovered and, additionally, found that Claudio's affidavit lacked guarantees of trustworthiness. It stated:

> If Claudio's post-sentencing claim that he lied because he wanted a good sentence for his cooperation was sufficient explanation for his alleged false statements, every formerly cooperating defendant would have the power to provide fellow co-defendants with a new trial by simply claiming to have been untruthful. Claudio's contentions with respect to being mad at Soto are insufficiently developed and do not present a persuasive motive for perjuring himself at trial.

(Ans. Ex. D at 8.)

Of course, matters of state law are not cognizable in a federal habeas petition. For this reason, petitioner has repackaged his newly discovered evidence claim for the present proceeding. He argues here that the Wisconsin courts' standard for new trials based on newly discovered evidence is irrational and that its application to petitioner violated his right to due process. He states that the requirement that a witness recantation is not sufficient to merit a new trial unless corroborated by additional newly discovered evidence imposes an "insurmountable barrier" on defendants claiming actual innocence. But then respondent argues that petitioner defaulted this due process claim by not raising it in state court, to which petitioner replies that his post-conviction counsel unreasonably failed to frame petitioner's claim in constitutional terms.

I must conclude that petitioner's claim was indeed defaulted. Petitioner makes no persuasive argument supporting his assertion that it was unreasonable for petitioner's post-conviction counsel to decline to argue to the state courts that their newly discovered

10

evidence standard was unconstitutional. He does not contend that Wisconsin's standard is unique among the states or that Wisconsin literally provides no avenue for post-conviction claims of actual innocence based on newly discovered evidence. He does not assert that it is the industry norm for post-conviction counsel to articulate newly-discovered evidence claims in federal constitutional terms. Perhaps most importantly, he does not name a single case in which any federal or state court has found that a newly discovered evidence standard (similar to Wisconsin or otherwise) violates due process. As such, I cannot find that petitioner's post-conviction counsel's failure to raise such a novel argument in connection with petitioner's co-conspirator affidavit was unreasonable or that petitioner can overcome his procedural default. For similar reasons, I cannot find that petitioner has been subjected to a fundamental miscarriage of justice.

## IV. CONCLUSION

Therefore,

**IT IS ORDERED** that Jose S. Soto, Sr.'s petition for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

Dated at Milwaukee, Wisconsin, this 14 day of August, 2007.

/s_____
LYNN ADELMAN
District Judge